## No. 7711.

### WIDOW SCIONNEAUX vs. JOS. WAGUESPACK ET AL.　CITIZENS' BANK, INTERVENOR.

Where a plantation and the slaves attached to it were sold in block, without separate estimation, for a round price, and the purchaser assumed as part of the price the debt due by his vendor, secured by mortgage and privilege on one of the several parcels of land constituting the plantation, the assumption created a privilege on the entire plantation, which was preserved by the recording, in the mortgage-office, of the act of sale containing this assumption, although the inscription of the mortgage so assumed subsequently ceased to have effect for want of re-inscription.

Where the same plantation was afterward sold, under execution, in block, for a round price, and the purchaser assumed, as part of the price of the adjudication, the same debt which had been assumed by the defendant in execution, the privilege created by this assumption attached to the entire plantation, which was preserved by the recording in the mortgage-office of the sheriff's deed containing the assumption.

Notes indorsed in blank by the payee are payable to bearer ; and where defendant denies that plaintiff, the holder, is the owner, without suggesting that he has any defenses which could be set up against any other person whomsoever which would not be available against the plaintiff, it is not material to inquire whether the plaintiff is the absolute owner or not.

The assumption by the purchaser of property, of the notes given for the price of sale, does not make him a party to the notes. His assumption is a personal obligation to pay the price of sale, and is subject only to the prescription of ten years.

APPEAL from the Fourth Judicial District Court, parish of St. James. *Duffel,* J.

R. G. Dugué for plaintiff and appellant:

First—Where the act of sale of an immovable is duly recorded the vendor retains thereafter his *privilege*, even though his special *mortgage* be lost by renunciation or by failure to re-inscribe. C. C. 3249, 3271 ; 19 An. 125 ; 17 L. 66 ; 8 An. 267 ; 17 An. 257 ; 4 An. 313 ; 3 An. 600 ; 12 R. 279 ; 3 L. 112 ; 3 R. 216.

Second—When Ferry assumed the notes he became personally bound for their payment (17 An. 256, 19 An. 125, 8 An. 267, 24 An. 292) and gave his vendors a new right of mortgage in addition to their privilege. 17 L. 66.

Third—But Ferry's assumption did not avail his vendors alone. It inured to the benefit of the holder of the notes, and gave him, to secure their payment, the same rights upon the property as the vendors had (C. C. 1890, 1902), with power to sue to enforce the assumption. C. P. 35 ; 5 An. 225 ; 6 R. 407 ; 17 L. 66 ; 12 R. 279. Consequently, any holder of the notes could have seized and sold the entire property at any time before the sheriff's sale of February 14, 1868, to Mrs. Ferry ; and on the day of the sale the notes were undoubtedly secured by a mortgage and by a vendor's privilege upon the plantation, dating from March 15, 1858.

Fourth—The same argument applies to Mrs. Ferry's assumptions. She became personally bound to pay the notes when she assumed them in the sheriff's deed (Twichell vs. Andry, 6 R. 407, and authorities there cited), and the whole unpaid portion of the price which she retained in her hands remained secured by a vendor's privilege, which was safely preserved by recording the deed of sale. 23 An. 757 ; Kohn vs. McHatton, 20 An. 243, last page of decision ; 12 R. 399.

Fifth—Her assumption, likewise, inured to the benefit of the holder of the notes, who, by subsequently receiving interest from her and by instituting this suit, consented to avail herself of the stipulations in her favor. 6 R. 607 ; New Orleans vs. Bailey, 5 M. 322 ; 12 R. 152 ; Mitchell vs. Cooley, 5 R. 240 ; 5 An. 228.

F. P. Poché, for defendants and appellees :

First—The Court will certainly hold with us that, " as a man binds himself so must he be bound," and will refuse to bind Ferry and his vendors any further than he intended to bind himself in his assumption of plaintiff's claim.

Mortgages are *stricti juris ;* they cannot be extended by implication to secure any other obligation than that expressly mentioned. 11 An. 175 ; 20 An. 154.

Second—Since the adoption of the constitution of 1868 and the legisla-

tion thereunder, and under the various amendments to the Civil Code on the subject of registry, as reviewed in 29 An. 315, by this court, the principle contended for by plaintiff and partially recognized in 17 L. 60, 19 An. 125, and 20 An. 385, has been completely abandoned, and the jurisprudence is now firmly settled, as follows : "Nothing can cure the omission of re-inscribing the original mortgage, any and all assumptions by the purchaser to the contrary notwithstanding ; and the re-inscription must be made in the same manner in which the first inscription is made."

In the case at bar no re-inscription whatever has even been attempted, and the omission is fatal to plaintiff's cause. Such was the ruling of the court in a case strikingly similar to ours, and reported in 28 An. 775, Villavaso vs. Walker. That decision absolutely disposes of plaintiff's pretensions. The same doctrine is consecrated in 29 An. 315, in 30 An. 1, and 31 An. 48. See, also, 20 An. 485, 25 An. 144.

---

The opinion of the court was delivered by

MARR, J. In January, 1852, Marcelin Scionneaux sold to Mrs. Priestly a tract of land, in the parish of St. James, having one arpent front on the river, by a depth of eighty arpents. The price was represented by two notes of the purchaser, each for two thousand dollars, payable, respectively, in the month of March, 1853 and 1854, the purchaser having the right to prolong the payment for ten years from maturity, on paying interest annually at eight per cent. This debt was secured by the vendor's mortgage and privilege, reserved in the notarial act of sale.

The annual interest was paid up to the 31st March, 1857 ; and on the 6th of March, 1858, the heirs of Mrs. Priestly sold this land, with other parcels, the whole constituting a sugar plantation, having ten and one third arpents front, and thirty-five slaves, in block, without separate estimation, to Alexis Ferry, for the round price of $95,000 ; in part payment of which Ferry assumed the debt and mortgage to Scionneaux. The notarial act of sale to Ferry was recorded, *in extenso*, in the mortgage-book, in the parish recorder's office, on the 15th March, 1858 ; and it was re-inscribed, *in extenso*, on the 6th July, 1876.

Ferry paid the interest regularly from March, 1858, to March, 1862. He was not able to pay regularly after this ; but he made small payments, on account, in 1864, 1865, 1866, 1867, and 1868.

On the 4th February, 1868, Ferry mortgaged this plantation to the Citizens' Bank ; and, on the 12th February, 1868, it was sold, by the sheriff, under *fieri facias*, and was adjudicated to Mrs. Alexis Ferry, for $44,850, in part satisfaction of her judgment against her husband for $114,000. In part payment of the price Mrs. Ferry assumed the debt to

Scionneaux, amounting, in capital and interest, to $5100, and the mortgage by which it was secured. The sheriff's deed to Mrs. Ferry was recorded in the proper mortgage-book on the 14th February, 1868; and it was re-inscribed on the 6th July, 1876. In this deed the land is described as having eleven and one third arpents front.

In 1870, Mrs. Ferry mortgaged this property to Philip Buchanan; and in 1871 she mortgaged it to Edward J. Gay & Co. Writs of seizure and sale issued on these two mortgages; and the property was adjudicated to Edward J. Gay, on the 1st April, 1876: and in March, 1877, Gay sold it to Joseph Waguespack.

In May, 1877, after thirty days previous demand of payment of Mr. and Mrs. Ferry, this suit was brought by the widow of Marcelin Scionneaux, as holder and owner of the two notes given by Mrs. Priestly for the price of one arpent front, against Mr. and Mrs. Ferry, and against Waguespack, to subject the entire property to the payment of the debt and interest from March, 1868, together with the interest, $1100, which had accrued up to that date, less $945 35 paid since on account of the interest.

Mr. and Mrs. Ferry separately accepted service, and confessed judgment as prayed for. Waguespack set up title under Gay, whom he called in warranty. Gay denied that Widow Scionneaux was the owner of the notes. He set up the title which he acquired under the mortgages to Buchanan and to Gay & Co. and the sheriff's adjudication to him. He alleged that the mortgage in favor of Scionneaux had not been re-inscribed; and that, on his demand in writing, the recorder had canceled and erased the inscription, on the 31st March, 1876. He admitted, as the petition charged, that Mr. and Mrs. Ferry were separate in property, and that they were insolvent, and had no property which could be reached for the payment of their debts. He plead the prescription of five years, in bar of the notes sued on; and he alleged that the acts of Ferry and wife, in attempting to renounce the prescription, and in confessing judgment, were null and void, and were done with the intention of defrauding him and other third parties in interest; and that the judgment on their confession was a nullity, of no effect in law.

The Citizens' Bank intervened, asserting priority, as mortgagee, to the rights set up by Gay and Waguespack, in virtue of the mortgage of Ferry in February, 1868.

On the confession of Ferry and wife judgment was rendered against them *in solido*, in December, 1877, with recognition of the vendor's mortgage, and privilege in accordance with the prayer of the petition.

As between the other parties final judgment was rendered against the plaintiff in October, 1879, in favor of defendant, Waguespack, his warrantor, Gay, and the Citizens' Bank, intervenor, rejecting her de-

mand, and maintaining the priority of the mortgage granted by Ferry to the Citizens' Bank over the mortgages under which Gay and Waguespack claimed. This is the judgment which the appeal taken by plaintiff brings up for review.

Counsel for plaintiff admits that the mortgage granted by Mrs. Priestly to Scionneaux cannot be enforced, for want of re-inscription; but he maintains that the assumptions by Mr. and Mrs. Ferry preserved the vendor's privilege upon the whole property; and that is the right, which plaintiff seeks to enforce in this suit. ·

The assumption by Alexis Ferry, in 1858, was part of the price of his purchase, not of the one arpent front, but of the whole tract sold to him by the heirs of Mrs. Priestly. He assumed, in their stead, the debt due to Scionneaux, and the mortgage in his favor which rested on that one arpent alone. He did not grant a new mortgage in favor of Scionneaux; but by assuming, as part of the price of the whole property, the debt due by the heirs of Mrs. Priestly, to Scionneaux, he bound the whole property, in favor of Scionneaux for this debt. The vendor's lien existed, primarily, in favor of the vendors of Ferry, the heirs of Mrs. Priestly; but the assumption of the debt due Scionneaux was a stipulation *pour autrui*, which was accepted by Scionneaux, by receiving, as he did, from Ferry, the annual interest up to 1862, and payments on account up to his death, which occurred in 1866. This stipulation was also accepted by plaintiff, the holder of the notes, by receiving from Ferry such payments as he subsequently made, on account of the interest; and this stipulation inured to the benefit of Scionneaux, and of his wife, after his death, as fully as if they had been the immediate vendors of Ferry. The vendor's privilege is the creature of the law. The act of sale shows the existence and assumption of the debt due to Scionneaux, as original vendor; and the law created the privilege. This privilege must be recorded, to be preserved; and the recording of the act from Priestly's heirs to Ferry, in the mortgage book, in March, 1858, and the re-inscription in July, 1876, gave notice to all persons, whomsoever, that of the whole price of the entire property sold by the heirs of Mrs. Priestly to Ferry, the amount due to Scionneaux was not paid; and that it had been assumed by Ferry. Civil Code of 1825, arts. 3238 to 3241, inclusive.

And so, in 1868, Mrs. Ferry bound herself to pay, as part of the price of the adjudication to her of the whole property, the debt due to Scionneaux, amounting to $5100, in capital and interest, for which her husband had bound himself personally, in 1858. This assumption on her part, created the vendor's lien, not on the one arpent front, but on the whole property, in favor of Scionneaux, or rather of his widow, who was then the holder of the notes; and Mrs. Scionneaux accepted this stipulation in her favor by receiving from Mrs. Ferry the several pay-

ments made by Mrs. Ferry on account of the interest. The recording of the sheriff's deed to Mrs. Ferry in 1868, and the re-inscription of it in 1876, preserved the lien, and gave full notice to all persons whomsoever that of the entire price of the adjudication, the amount due to Scionneaux was not paid ; and that it had been assumed by Mrs. Ferry.

The original mortgage in favor of Scionneaux bound the one arpent front, only ; but superadded to this was the personal obligation of Mrs. Priestly. This mortgage is no longer in force ; but the personal obligations assumed by Mr. and Mrs. Ferry have kept the debt in force, as against them ; and the vendor's lien which plaintiff seeks to enforce in this suit, is that which affected the entire property in the hands of Alexis Ferry ; and which also affected it in the hands of Mrs. Ferry, by reason of their respective assumptions of that debt, and their retention of so much of the price of the whole property for the payment of that debt. The whole property having been sold by the heirs of Priestly, in block, for a round price, the whole property was affected with the vendor's lien for any part of that price assumed by the purchaser and not paid ; and the same is true with respect to the purchase by Mrs. Ferry, which was also in block, and for a round price.

As to the ownership of the notes, they are indorsed in blank by the payee, and the legal title is in the holder. Widow Scionneaux produced the notes, and filed them with her petition ; and it is not suggested that any defenses could be made against these notes in the hands of any person, whomsoever, which could not have been made against them in the hands of Widow Scionneaux. The legal title being in her, it was not material to inquire whether she was the absolute owner or not.

The plea of prescription set up by Gay is no bar to this action. The assumption by Ferry did not make him a party to the notes. The payments of interest annually, by Mrs. Priestly and her heirs, up to 31st March, 1857, had prevented the running of prescription ; and the notes and the mortgage and privilege were in full force at the time Ferry assumed them, in March, 1868. By repeated payments of interest by Ferry, the last on his own account being on the 24th January, 1868, the running of prescription had been interrupted. His assumption was a personal obligation, subject only to the prescription of ten years ; and this suit was brought and service was accepted, with confession of judgment, on the 5th of May, 1877.

So, with respect to Mrs. Ferry. In every year, from 1868 to December, 1873, inclusive, numerous payments were made to Widow Scionneaux, by Ferry, as agent for and in behalf of his wife, the whole aggregating $945 35.

There is not the slightest foundation for the charge that Ferry and wife intended to defraud any person whomsoever, by accepting service

and confessing judgment. They could have set up no plausible defense to the demand, proven by public and recorded acts; and their confession bound themselves alone.

So far as the intervention of the Citizens' Bank is concerned, the plaintiff is in no manner interested in the question as to whether the mortgage in favor of the bank granted by Ferry, in February, 1868, primes those under which Waguespack and Gay claimed. The assumption by Ferry, in 1858, antedates the mortgage to the bank by ten years; and in the certificate of the recorder of mortgages, embodied in the act of mortgage by Ferry to the bank, the mortgage in favor of Scionneaux, and the assumption of that mortgage and of the debt by Ferry are recited as the first incumbrance recorded against the property.

The mortgage to the bank was granted eight days before the sale by the sheriff to Mrs. Ferry, and her assumption of the Scionneaux debt and mortgage; but this mortgage to the bank was passed before the recorder of the parish of St. James; and it was not recorded until the 23d April, 1868, more than seventy days after its date; and more than two months after Mrs. Ferry's assumption had been recorded in the mortgage office. The mortgage to the bank, therefore, was without effect, so far as the rights of the plaintiff are concerned, whether in virtue of the assumption by Ferry, or of that by his wife. Both these assumptions were in force, and both affected the entire property, at the time the mortgage to the bank was recorded; at the time this suit was brought; and at the time the judgment was rendered; and the lien and privilege resulting from them prime any subsequently acquired or subsequently recorded mortgage.

It may also be mentioned, in this connection, that Edward J. Gay had special notice of the Scionneaux mortgage, and of the assumption by Mr. and Mrs. Ferry, because the recorder's certificate, embodied in the act of mortgage by Mrs. Ferry to Gay & Co., recites the Scionneaux mortgage and the assumptions by Ferry and his wife, as the first incumbrance on the property; and in his written demand to have the Scionneaux mortgage canceled and erased, he specially mentions these assumptions, and the dates at which they were recorded.

The judgment appealed from, in so far as it relates to or affects the rights of plaintiff, is annulled, avoided, and reversed; and it is now ordered, adjudged, and decreed, that the vendor's lien and privilege, resulting in favor of plaintiff, Widow Scionneaux, from the act of sale by the heirs of Mrs. Priestly to Alexis Ferry, of date 6th March, 1858, and from the sheriff's deed to Mrs. Josephine Aime, wife of Alexis Ferry, of date February 12, 1868, be recognized and declared to be executory upon and against the property, to wit, the sugar plantation in the parish of St. James, as described in the said act of sale by the heirs of Mrs.

Priestly to Alexis Ferry, and as described in the said sheriff's deed to Mrs. Josephine Aime, wife of Alexis Ferry, now in the possession of Joseph Waguespack ; and accordingly it is further ordered, adjudged, and decreed, that, unless the said Joseph Waguespack do pay and satisfy the judgment in this case rendered, signed on the fourth day of December, 1877, in favor of plaintiff, Josephine Oubre, Widow Marcelin Scionneaux, against Mrs. Josephine Aime, wife of Alexis Ferry, and against Alexis Ferry, her husband, *in solido*, the said property be seized and sold, according to law, to pay and satisfy the said judgment, with privilege and preference ; that Joseph Waguespack pay the costs in the district court and in this court ; and that the same judgment which is now rendered against the said Joseph Waguespack be also rendered in his favor, against Edward J. Gay, his warrantor.

Rehearing refused.