HENRY F. TURNER, Judge pro tem.
Plaintiff corporation herein entered into a written, unrecorded contract with defendant on May 3, 1960, to move her house from one location to another in Jefferson Parish and also to do certain work and make improvements in connection therewith for the price of $2,300. The contract is in the form of a letter on the stationery or letterhead of Abry Brothers and is signed by Herman A. Abry for the plaintiff and accepted by the defendant. Plaintiff, in due course, but after some delay, performed its part of the contract by moving the house to the new site as agreed to and received $1,200 as part payment of the price about August 20, 1960, and, in addition to the $1,200, received two checks, each for $500, drawn to the order of defendant by a third party and endorsed in blank by her. The checks are dated respectively June 14, 1960, and June 28, 1960. The plaintiff deposited these checks to its account and the bank dishonored them because of insufficient funds in the maker’s account and charged the $1,000 back to plaintiff. The plaintiff thereafter, on September 12, 1960, filed a lien against the property in Jefferson Parish in the sum of $1,100, plus $2.25, the cost of recording the lien, and later, before the expiration of a year, payment not having been made, had the lien reinscribed at an additional cost of $2.25.
Plaintiff brings this suit to recover the balance due under its contract and prays for enforcement of its lien and privilege under LSA-R.S. 9:4801. The defendant in the case admits the satisfactory completion of the work on the part of the plaintiff, but pleads payment of $1,000 by virtue of delivery of the two dishonored checks to-talling that amount. She admits, however, that she owes a balance of $100 and has offered to pay that amount for a full acquittance under the contract. The lower court gave judgment for plaintiff as prayed for, from which judgment the defendant has perfected her appeal.
*806 The pertinent part of the contract dealing with the obligation of defendant reads as follows:
“This work to be done for the sum of $2300.00. Payments: $1,300.00 when house is at the new site, and balance with two postdated of $500.00 each of Mrs. Mary R. LeBlanc dated June 14 June 28th.”
The words “with two postdated of $500.00 each of Mrs. Mary R. LeBlanc dated June 14 June 28th” are interlined in ink and initialed by the parties, which interlineation is admitted to be in the handwriting of the defendant. The record shows that at defendant’s request the two worthless checks payable to her were retrieved from the plaintiff upon her leaving the receipt which is filed in evidence in the case and reads as follows:
“I received from Mrs. Orellana, Abry Brothers’s Secretary, my two N. S.F. checks for amount of $500.00 each check, and signed by Mrs. Mary R. Leblanc.
(Signed) Ruth Tillman”
The defendant contends that the plaintiff accepted the checks as such, without regard to whether or not they were ever paid, as payment and that presents the sole issue in the case.
Upon trial of the case there was evidence offered to show what the intent of the parties was with regard to the written contract. Counsel for defendant objected to all the testimony in that regard on the theory that a written contract cannot be varied or abrogated or its meaning changed by parol evidence. He claims the contract is unambiguous. If no testimony had been offered other than the contract and the checks, defendant would have to lose. Defendant claims the contract is unambiguous and that it was drawn by plaintiff. The typewritten part of the contract was drawn by plaintiff, apparently in its office, and when presented to the defendant, she interlined the typewritten part, and it will be noted that in the entire contract the word “check” does not appear. Of course this was an inadvertence in omitting the word “check,” as it was clearly her intention to include it in the addition. Without parol testimony on this score, there are no checks before the court. The insertion by Mrs. Tillman without an explanation could refer to a number of instruments, such as due bills, work orders, notes, assignment of claims, etc. The rule of law that a contract when ambiguous is to be construed against the person drawing the contract would apply to the defendant as to the ink-written addition. However, we do not subscribe to counsel’s argument that parol evidence is inadmissible, and we think the trial court properly heard same. Furthermore, defendant’s counsel himself offered testimony to explain or to try to show what the intent of the parties was with regard to the contract that he claims was unambiguous.
Mrs. Tillman’s plea of payment is an affirmative defense and she bears the burden of proving same. On the question of proof she has, in our opinion, failed to do so. While she claims that Mr. Abry, the representative of the corporation with whom she was dealing, knew all about Mrs. LeBlanc, the maker of the checks, and agreed to accept the checks as payment, this is contradicted by Mr. Abry. He stated he knew nothing of Mrs. LeBlanc and it strikes us as an unheard of business practice for a person to take checks in these large amounts without any knowledge of or connection with the maker unless endorsed in blank or payment guaranteed. The fact that Mrs. Tillman endorsed the checks in blank makes her liable therefor in the absence of the proof of any agreement to the contrary. Such is the plain law of the State under the Negotiable Instruments Act, and is too well-settled to necessitate citation of authority. As the trial judge aptly pointed out during the course- of the trial, all Mrs. Tillman had to do, if the *807 intent was as she contends, was add the words “without recourse” after her endorsement and thereby protect herself. Failing to do so, the trial judge properly found that she was responsible for the amount of the checks.
Counsel for the defendant argues that defendant had a right to prove an express or implied agreement that the checks, per se, were payment and cites 70 C.J.S. Payment § 116, which reads as follows :
“In order to determine whether the delivery of a commercial paper by the debtor amounts to absolute payment, evidence of the intention of the parties is admissible. Further, in order to prove that a bill, note, or check was received as an absolute payment, evidence of an express agreement to that effect is admissible, and, in the absence of an express agreement, evidence is admissible as to the circumstances attending the transaction, as well as with respect to the subsequent acts and conduct of the parties. * * * ”
Conceding his position tenable in this respect, the trial court properly found that the defendant had not offered proof sufficient to bring this case within that rule of law. The defendant, pleading payment, had the burden of proof to prove same by a preponderance of the evidence. We think she has not proved an express agreement to that effect, and when we look to the circumstances attending the transaction and subsequent acts and conduct of the parties, we find from the evidence that due to a delay, for some unknown reason, in the moving of the house, that the postdate on the checks arrived while the checks were still in the hands of the defendant. There is no evidence to show whether or not she attempted to cash them on those dates or not, nor is there any evidence to show whether or not they would have been honored on the postdates. The further circumstance which mitigates against the defendant is her unqualified endorsement on the checks, plus her retrieving the checks, which she receipted for as “my checks,” from plaintiff, inasmuch as the record discloses she still retains the checks. There is no showing that she has re-tendered the checks to plaintiff, but on the contrary, has attempted to effect a collection of them. An attending, subsequent act with regard to plaintiff which would negative defendant’s contention is that it, upon finding the checks dishonored, immediately notified defendant and sought to collect on them from defendant, and failing to do so filed this lawsuit.
Counsel for defendant cites the case of Belknap Hardware & Mfg. Co. v. Hearn, 179 La. 909, 155 So. 396, the facts of which are entirely different from those before us in this case. In the Belknap case a hardware corporation in Monroe was in financial straits. The plaintiff, Belknap, was a creditor of the hardware company to quite a large extent. Belknap wanted to see the hardware store continue in business in the hope of obtaining their money. Belk-nap agreed to extend an additional $5,000 credit if several of the officers, including Hearn, would endorse a $5,000 note of the hardware company which was done. Belk-nap then supplied goods to the value of $2,300 and apparently realizing they were sending good money after bad cut off the hardware company’s credit and refused to extend the additional $2,700 as agreed to. Belknap then sued Hearn as an endorser and the Court properly held there was a failure of consideration. Belknap had not extended the credit to the $5,000 as agreed upon. In this case defendant frankly admits that plaintiff has performed its part of the contract satisfactorily.
We think under the facts in this case that the judgment of the lower court is eminently correct and is therefore affirmed.
Affirmed.